UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CHRISTOPHER NICKENS AND )
PATRICIA NICKENS, )
    )
        Plaintiffs, )
    )
    v. ) Civil Action No. 09-0307
    )
DISTRICT OF COLUMBIA AND )
MAYOR ADRIAN FENTY, )
    )
        Defendants. )
---

MEMORANDUM OPINION

Plaintiffs, Christopher and Patricia Nickens, brought suit against defendants, the District of Columbia and Mayor Adrian Fenty in his official capacity, alleging that Mr. Nickens was mistreated and that his constitutional rights were violated while he was incarcerated in the District of Columbia Jail. The matter is now before the Court on the District of Columbia's motion to dismiss or, in the alternative, for summary judgment and Mayor Fenty's motion to dismiss. After careful consideration of the parties' papers, the relevant case law and statutes, and the entire record in the case, the Court will grant both motions.[1]

---

[1] The Court had the following papers before it in connection with these motions: the Complaint ("Compl."); Defendant District of Columbia's Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment ("Mot."); Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint or, in the alternative, for Summary Judgment ("Opp."); Defendant District of Columbia's Reply to Plaintiffs' Opposition to the District of Columbia's Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment ("Reply"); Defendant Adrian Fenty's Motion to Dismiss Plaintiff's Complaint; Plaintiffs' Opposition to Defendant Adrian Fenty's Motion to Dismiss Plaintiffs' Complaint; and Defendant Adrian Fenty's Reply to Plaintiffs' Opposition to Fenty's Motion to Dismiss.

I.  BACKGROUND

During all times relevant to this matter, Christopher Nickens was incarcerated in District of Columbia Department of Corrections ("DOC") facilities.  See Compl. ¶ 4.  Prior to May 2007, Mr. Nickens was incarcerated in the Correctional Treatment Facility ("CTF").  See id. ¶ 9.  Mr. Nickens alleges that at this time he was exempted from being placed in a top bunk bed due to his diabetes and hypertension.  See id. ¶ 8.  On May 11, 2007, the DOC transferred Mr. Nickens to the District of Columbia Jail.  See id. ¶¶ 9-10.  According to Mr. Nickens, jail personnel assigned him to a top bunk bed despite his repeated requests for a bottom one.  See id. ¶ 10.

On May 14, 2007, Mr. Nickens fell while he was trying to get down from his top bunk bed.  See Complaint ¶ 12.  He alleges that he sustained severe head, neck, back, and arm injuries when he landed on the cement floor.  See id. ¶¶ 12–15.  Although the jail personnel provided medical treatment to Mr. Nickens, according to him, they did not then assign him to a bottom bunk bed.  See id. ¶ 16.

Plaintiffs assert four claims against the defendants: (1) negligent supervision of inmates; (2) negligent training of staff and agents; (3) a violation of the Eighth Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983, for the failure to train and supervise; and (4) a violation of the Eighth Amendment for deliberate indifference to serious medical needs.  The District of Columbia has moved to dismiss or, in the alternative, for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified at 42 U.S.C.

§ 1997e(a).[2] The District of Columbia also argues that plaintiff may not pursue his claim for punitive damages, because punitive damages are not available against the District of Columbia. In addition, the District argues that Mrs. Nickens does not have standing to sue. Mayor Fenty moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Mayor is an inappropriate defendant and that Mrs. Nickens does not have standing to sue.

## II. DISCUSSION

### A. Plaintiff Patricia Nickens's Standing to Sue

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. See, e.g., Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); A.N.S.W.E.R. Coalition v.Kempthorne, 493 F. Supp. 2d 34, 42 (D.D.C. 2005). A federal court has no subject matter jurisdiction where the plaintiff lacks standing. See A.N.S.W.E.R. Coalition v. Kempthorne, 493 F. Supp. 2d at 41-42 (citing Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006)). Accordingly, the Court will treat both defendants' motions to dismiss Patricia Nickens's claims for lack of standing as seeking dismissal for lack of subject matter jurisdiction

---

[2] The PLRA's exhaustion requirement is not jurisdictional, and failure to exhaust therefore does not subject the complaint to dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Ali v. District of Columbia, 278 F.3d 1, 5–6 (D.C. Cir. 2002). Accordingly, the District of Columbia moves to dismiss for failure to exhaust pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because resolution of the matter requires the Court to consider materials outside the pleadings, Rule 12(d) of the Federal Rules of Civil Procedure requires the Court to convert the motion into one for summary judgment pursuant to Rule 56.

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See id. (citing Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004)).

In order to establish her standing to sue, Mrs. Nickens must show, at an "irreducible constitutional minimum": (1) that she has suffered an injury in fact — the invasion of a legally protected interest; (2) that the injury is fairly traceable to the defendants' conduct (a causal connection); and (3) that a favorable decision on the merits likely will redress the injury to her. See id.; see also Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "The alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative." A.N.S.W.E.R. v. Kempthorne, 493 F. Supp. 2d at 42 (citing Friends of the Earth v. Laidlaw, 528 U.S. at 180-81; Lujan v. Defenders of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858; Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002)). If Mrs. Nickens cannot meet all three prongs of this test, the Court must dismiss her claims for lack of standing.

There are no allegations in the complaint relating to any injury allegedly suffered by Mrs. Nickens as a result of her husband's fall from the top bunk. In fact, Mrs. Nickens is not mentioned in the complaint other than in the caption. Although plaintiffs argue in their opposition brief that Mrs. Nickens suffered emotional distress as a result of her husband's fall, this is not one of the allegations in the complaint, nor are there any allegations in the complaint which would support such a claim. Accordingly, the Court concludes that Mrs. Nickens has not alleged that she suffered an injury in fact, and she therefore does not have standing to sue in her own name. She will be dismissed as a plaintiff.[3]

---

[3] Mrs. Nickens also states that she has power of attorney for her husband. Rule 17(a) of the Federal Rules of Civil Procedure requires that an action must be prosecuted in the

## B. Exhaustion of Administrative Remedies under the PLRA

The District of Columbia argues that Mr. Nickens failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, codified at 42 U.S.C. § 1997e(a). In relevant part, the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement of Section 1997e(a) is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). The purpose of Section 1997e(a) is to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and, where possible, to "satisfy the inmate, thereby obviating the need for litigation." Id. at 525. A prisoner must complete the administrative process "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he or she has exhausted his or her administrative remedies. Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Davis v. D.C. Dep't of Corr., 623 F. Supp. 2d 77, 80 (D.D.C. 2009).

---

name of the real party in interest. See FED. R. CIV. P. 17(a). As explained by Professor Moore: "An attorney-in-fact is not a real party in interest. The attorney is merely an agent of the real party in interest and does not possess interests sufficient to qualify for real party in interest status. Thus, the attorney-in-fact cannot bring suit in its own name." 4 MOORE'S FEDERAL PRACTICE § 17.10 (3d ed. 2002). Although Mrs. Nickens may bring suit on her husband's behalf through her power of attorney for him, she may not maintain suit in her own name or seek relief for herself on this ground.

The DOC provides administrative remedies by way of its Inmate Grievance Procedure ("IGP"). Initially, inmates are encouraged to resolve matters informally. See Mot., Ex. 1, Program Statement re Inmate Grievance Procedure, ¶ 14(a). The formal procedure requires inmates to file a formal grievance by placing an IGP form (or, if no form is available, on standard letter sized paper) in a box in the D.C. Jail labeled "grievances" within fifteen days from the date of the incident. See id. at 15(a). The investigating manager is required to issue a written response on behalf of the warden within twenty-one days. See id. ¶ 15(e)(1). If the inmate is not satisfied with the warden's response, he or she may file an appeal to the Deputy Director of the DOC within five days after receiving the response from the warden. See id. ¶ 16(a). The Deputy Director is obliged to respond to such an appeal within twenty-one days. See id. As a final step, an inmate who is still dissatisfied may file an appeal with the Director within five days of the Deputy Director's response. See id. ¶ 16(d)(1). The Director is required to respond within twenty-one days. Only thereafter may an aggrieved inmate file suit in federal court.

In support of its argument that Mr. Nickens did not exhaust his administrative remedies, the District of Columbia has submitted an affidavit from Sallie Thomas, the Acting Executive Assistant to the Director of DOC. See Mot., Ex. 2. In her affidavit Ms. Thomas states that it is the Office of the Director's practice to scan correspondence to the Director of DOC and responses from the Director into a computer system. See id. ¶¶ 4-5. Upon initiation of this lawsuit, she searched the system for any correspondence to or from Mr. Nickens during 2007 and did not find any record of such correspondence. See id. ¶¶ 8-9. Based on the time periods for filing and appealing a grievance described in the previous paragraph, had Mr. Nickens pursued an appeal of a formal grievance to the Director, he would have done so in 2007. Accordingly, the

fact that no record exists for the final step of the required administrative appeal suggests that he did not exhaust his administrative remedies.

Mr. Nickens has not submitted his own affidavit or declaration stating that he pursued the administrative process. While he attaches numerous documents to his opposition brief relating to a grievance about a requested neck and back brace, a different incident which occurred in 2006, he has submitted no evidence respecting the May 2007 incident that is the subject of this lawsuit. The IGP requires that any appeal must be specific to the complained of incident. See Mot., Ex. 1, ¶¶ 16(b)(3) & 14(b)(3). Thus, there does not appear to be any genuine issue of material fact as to whether Mr. Nickens has exhausted his administrative remedies.

Mr. Nickens also attaches letters from his attorney to the Director of the DOC and the warden of the D.C. Jail (both dated May 28, 2007) regarding his fall from the bunk bed and resulting injuries. See Opp., Ex. 3. These letters, however, are not procedurally proper grievances or appeals. They provide no indication that Mr. Nickens or anyone acting on his behalf actually filed a grievance prior to raising the issue with the warden or the Director. In addition, based on the dates of the letters, the letter to the Director should not be considered an appeal of a response to the letter to the warden, because both were sent on the same day. "The exhaustion requirement is not satisfied 'by filing an untimely or otherwise procedurally defective administrative grievance or appeal.'" Davis v. D.C. Dep't of Corr., 623 F. Supp. 2d at 82 (quoting Woodford v. Ngo, 548 U.S. 81, 83-84 (2006)). See also Linares v. Jones, Civil Action No. 04-0247, 2007 WL 1601725 at *3 (D.D.C. June 4, 2007) (a court should not infer that a prisoner completed his administrative remedies based on evidence that a prisoner initiated the required procedure).

7

Mr. Nickens argues that even if he did not exhaust all of his administrative remedies, he is entitled to proceed to litigate the matter before this Court for two reasons. First, relying on Marvin v. Goord, 255 F.3d 40 (2d. Cir. 2001), he argues that he should be granted an irreparable injury exception to exhaustion, because he would have suffered irreparable harm if he were required to exhaust all remedies prior to bringing suit. See Opp. at 8. As Judge Tatel explained, regardless of the exhaustion requirements of the PLRA, courts may still exercise "their traditional equitable power to issue injunctions to prevent irreparable injury *pending* exhaustion of administrative remedies." Jackson v. District of Columbia, 254 F.3d at 268 (emphasis added). Prisoners may not, however, *bypass* the administrative process entirely because they feel that they are suffering irreparable harm. See id.

Second, relying on Howard v. Ashcroft, 248 F. Supp. 2d. 518 (M.D. La. 2003), Mr. Nickens argues that exhaustion is not required if the appeal would take too long. See Opp. at 8. In Booth v. Churner, however, the Supreme Court made clear that the PLRA eliminated the condition that a prisoner is only required to exhaust his or her remedies if the administrative remedies are "plain, speedy, and effective." Booth v. Churner, 532 U.S. at 739. In addition, the IGP provides procedures for filing an emergency grievance. See D.C. Mot., Ex. 1 ¶ 17. There is no evidence that plaintiff filed or attempted to file an emergency grievance in lieu of pursuing the standard grievance procedure. The Court will grant judgment for the defendants because Mr. Nickens has not exhausted his administrative remedies.

In light of the foregoing, the Court need not reach the issue of whether punitive damages are available or whether Mayor Fenty is a proper defendant.

## III. CONCLUSION

For the reasons explained above, both defendants' motions will be granted. An Order consistent with this Memorandum Opinion will issue this same day.

                                                               _/s/_____
                                                               PAUL L. FRIEDMAN
                                                               United States District Judge

DATE: March 16, 2009